IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARL LEE SIMINGTON,

       Petitioner,

   v.

MARK NOOTH,

       Respondent.

Case No. 6:14-cv-01252-SI

OPINION AND ORDER

Nell Brown, Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

     Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Samuel A. Kubernick, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

     Attorneys for Respondent

1 - OPINION AND ORDER

SIMON, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Robbery.  For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#16) is denied.

## BACKGROUND

In the summer of 2003, petitioner and his accomplice, Stefanie Souders, stole cigarettes and cash from three different Plaid Pantry convenience stores in Portland, as well as several food items from a Whole Foods grocery store.  As a result, the Multnomah County Grand Jury indicted petitioner and Souders on three counts of Robbery in the Second Degree and one count of Theft in the Second Degree.  Respondent's Exhibit 102.  Souders entered a guilty plea and received a probationary sentence.  Respondent's Exhibit 104, p. 33.

Petitioner waived his right to a jury trial and proceeded to a court trial in front of Judge Sidney Galton.  At the close of the State's case, petitioner's attorney moved for a judgment of acquittal on all counts, and Judge Galton granted the motion to the extent that he: (1) dismissed the charge of Theft in the Second Degree; and (2) reduced the Whole Foods charge from Robbery III to Robbery III.  *Id* at 129-143.  Judge Galton ultimately found petitioner guilty of the remaining charges and sentenced him to consecutive 70-month sentences for each of the two Robbery II

convictions, and a consecutive 16-month sentence for the Robbery III conviction for a total prison sentence of 156 months. Respondent's Exhibit 105, pp. 259-260.

Petitioner took a direct appeal, but the Oregon Court of Appeals affirmed the trial court's decision without opinion, and the Oregon Supreme Court denied review. *State v. Simington*, 215 Or. App. 703, 170 P.3d 1137, *rev. denied*, 344 Or. 110, 178 P.3d 249 (2008). Petitioner filed a successive direct appeal which the Oregon Court of Appeals dismissed on its own motion. Respondent's Exhibits 112-113.

Petitioner next filed for post-conviction relief ("PCR") in Marion County where the PCR trial court denied relief. Respondent's Exhibits 144-146. The Oregon Court of Appeals affirmed the lower court's decision without opinion, and the Oregon Supreme Court denied review. *Simington v. Williams*, 261 Or. App. 584, 326 P.3d 78, *rev. denied*, 355 Or. 567, 329 P.3d 770 (2014).

Petitioner filed this 28 U.S.C. § 2254 habeas corpus case on August 4, 2014, and amended his Petition on December 22, 2014 to state the following grounds for relief:

> **Ground One:** The trial court violated Petitioner's constitutional right to an impartial tribunal, guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, when the trial court presided over Petitioner's case despite debilitating mental health issues.
>
> **Ground Two:** The trial court violated Petitioner's constitutional rights, guaranteed

3 - OPINION AND ORDER

by the Fifth and Fourteenth Amendments to the United States Constitution, when it admitted certain evidence, including evidence of Petitioner's violent history and the in-court identification of Petitioner by Bruce A. Knight.

**Ground Three**: The trial court violated the Petitioner's constitutional rights, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, violated when he was shackled at trial.

**Ground Four**: Petitioner was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed in the following particulars:

A. to effectively engage in plea negotiations, and to effectively advise Petitioner regarding the State's plea offer;

B. to effectively advise Petitioner about his right to jury trial, rendering Petitioner's decision to waive his right to trial by jury not knowing, voluntary, and intelligent;

C. to seek recusal of the trial judge or to object as necessary in order to safeguard Petitioner's right to an impartial tribunal;

D. to pursue and preserve appropriate objections to inadmissible evidence, or to seek a mistrial in connection with the trial court's admission of inadmissible evidence, including, but not limited to, challenging hearsay evidence, the in-court identification of Petitioner by Bruce A. Knight, and evidence about Petitioner's violent history;

E. to object to the shackling of Petitioner at trial;

F. to pursue and effectively argue appropriate motions, including motions to suppress and for judgment of acquittal; and

G. to pursue and preserve appropriate objections to Petitioner's sentence.

**Ground Five:** Petitioner was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when appellate counsel failed to pursue meritorious issues on appeal.

**Ground Six:** The trial court violated Petitioner's constitutional rights, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, in denying the motion for a judgment of acquittal.

**Ground Seven:** The trial court violated Petitioner's constitutional rights, guaranteed by the Fifth, Sixth and Fourteenth Amendments, when it imposed sentence.

Respondent asks the court to deny relief on the Amended Petition because: (1) it is questionable whether petitioner fairly presented his Ground One claim to Oregon's state courts; (2) petitioner fails to carry his burden of proof on the claims he does not support with argument; and (3) the state courts denied relief in decisions that were not objectively unreasonable, and which are entitled to deference from this court. Because petitioner's Ground One claim fails on its merits for the reasons discussed below, the court declines to decide the exhaustion issue. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

///

## DISCUSSION

### I.   Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires

the state court decision to be more than incorrect or erroneous. *Id* at 410.  The state court's application of clearly established law must be objectively unreasonable.  *Id* at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law.  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision.  *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## II.  **Unargued Claims**

In his Amended Petition, petitioner raises seven grounds for relief.  In his supporting memorandum, however, petitioner chooses to argue only Grounds One, Four(b), Four(D), Four(F), Five and Six. Petitioner does not argue the merits of his remaining claims, nor does he address any of respondent's arguments as to why relief on these claims should be denied.  As such, petitioner has not carried his burden of proof with respect to these unargued claims.  *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims).  Even if petitioner had briefed the merits of these claims, the court has examined them

based upon the existing record and determined that they do not entitle him to relief.

## III. **Ground One: Fitness to Preside**

Petitioner claims Judge Galton violated his right to due process when he presided over petitioner's trial while suffering from debilitating mental issues. He asserts that there were instances during his trial when Judge Galton did not know what the attorneys were doing, engaged in a concerning "back and forth" with defense counsel as to whether he had used the word "chippy," and imposed a harsh sentence on petitioner based upon his unsupported belief that petitioner had acted violently toward Souders. Because the Oregon Court of Appeals did not issue a written opinion as to this claim, this court conducts an independent review of the record.

"Due process implies a tribunal both impartial and mentally competent to afford a hearing." *Jordan v. Massachusetts*, 225 U.S. 167, 176 (1912). Petitioner alleged during his direct appeal that Judge Galton was not mentally competent, and submitted several letters from Judge Galton's physicians detailing his mental health issues. Respondent's Exhibit 107. The letters express concern over Judge Galton's short-term memory, volatility, concentration, suicidal ideation, and difficulty making decisions. *Id.* The letters also reveal that in 2005, Judge Galton was disabled and unable to perform the duties of his office. *Id.* However, the

8 - OPINION AND ORDER

earliest of the letters is dated March 2, 2005, and none of the letters indicate that Judge Galton was unable to effectively preside over a trial prior to 2005. Where petitioner's trial occurred in January of 2014, and Judge Galton imposed his sentence in May of 2004, the letters are of limited value to petitioner's attempt to establish that Judge Galton was unfit to preside over those proceedings.

Petitioner also believes that two instances of confusion on the part of Judge Galton demonstrate his lack of capacity to hold the trial. In the first, the attorneys were discussing how to present the evidence, and whether to take each criminal incident in turn. During this discussion, the prosecutor erroneously referred to the incidents as separate cases, prompting Judge Galton to declare that there were not multiple cases and, "You guys scare me because I keep thinking you may be trying something about which I don't know. That's fine. However you guys want to do it is okay, fine by me." Respondent's Exhibit 104, p. 59. Given the erroneous reference to multiple cases by the prosecutor, Judge Galton's statements were reasonable.

Petitioner also points to another portion of the record showing confusion on Judge Galton's part where the prosecutor elicited testimony from a police officer that one of the robbery victims provided a license plate number for petitioner's car that obviously did not correspond to petitioner's car (described as a

"smaller import-type"), but instead purportedly belonged to a 1950

pickup truck:

| | |
|---|---|
| Officer: | Yeah, listed plate returns to a '50 Chevrolet pickup.  So a policeman would just say 777 AMR similar.  Something's screwed up someplace. |
| DA: | And so something screwed up, either – you're saying either the clerk got it wrong or something else might be screwed up? |
| Officer: | Well, not that the clerk got it wrong, but there's -- some of the -- a number -- |
| Defense: | Objection. |
| Officer: | -- a number or something's out of place. |
| Defense: | Judge, he's speculating as to what's going on here. |
| Court: | I take it that he's just explaining his answer and I'll allow it. |
| DA: | No further questions. |
| Court: | Okay.  And at some point, you gentlemen are going to have to tell Officer Jensen what you all are doing because I don't really understand and I doubt he understands.  I don't know if he was on any of the other incidents. |
| DA: | He was. |
| Court: | Okay. |
| DA: | But -- |
| Court: | Apparently they're doing something that you and I don't exactly know about, but we'll find out as to when you're going to be back, if you're |

> going to be back after [defense
> counsel] asks you questions about
> this incident.    I just want the
> witness to know what's going on
> because I don't really understand.

Respondent's Exhibit 104, pp. 62-63.

While Judge Galton demonstrates confusion as to where this line of questioning is headed, his confusion appears to be reasonable where: (1) the license number was not, itself, a material issue at the trial; (2) the fact that there might have been a clerical error was not germane to the charges petitioner faced; and (3) the prosecutor abruptly ended his line of questioning without achieving any apparent goal.

Petitioner also contends that Judge Galton was overly argumentative when he engaged in a brief exchange with defense counsel as to whether he had ever referred to the various robberies as "chippy."  The court immediately disagreed:

Court:     Not this.    Chippy, that is not a word I use.

Defense:   Well, I thought that I heard that word.  And if not, I'm in error.

Court:     It sure doesn't sound like me.

Defense:   But you were –

Court:     But under any circumstances, it's certainly smaller and far less serious than what we're discussing today.

Defense:   And you were describing them in that fashion. And perhaps I misspoke.

Court:     Chippy?

11 - OPINION AND ORDER

Defense:   To Mr. Simington.

Court:     Boy, it sure doesn't sound like me.

Defense:   Perhaps –

Court:     Oh, well.

Respondent's Exhibit 105, p. 231.

This portion of the transcript does not reveal that Judge Galton's behavior was concerning in any way. Indeed, Judge Galton appeared not to dwell on the issue, simply indicating that it did not sound like him, saying "Oh, well," and moving on. Nothing about this exchange shows Judge Galton was unfit to proceed over the trial.

While petitioner takes issue with the rationale underlying his sentence where the prosecutor opined that Souders was a victim of abuse by many pimps including petitioner,[1] it does not appear that these comments constituted any basis for his sentence. Judge Galton specifically identified the bases for the sentence he was imposing:

> The sentences that will follow are premised in part upon your persistent involvement in similar offenses, that you were on probation or parole at the time of your offenses, that you have had persistent, unrelenting misconduct while under supervision, and that prison can be a basis for departure, each separately and in concert.

Respondent's Exhibit 105, p. 259.

---

[1]  Respondent's Exhibit 105, pp. 252-25

12 – OPINION AND ORDER

The court has conducted an independent review of the record as to petitioner's due process claim and finds that petitioner failed to prove Judge Galton was judicially unfit to preside over the trial. As a result, the state court decision denying relief on this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

## IV.    Ground Four(B): Counsel's Failure to Advise Regarding Bench Trial

Petitioner also claims that his appointed attorney performed ineffectively when he failed to inform him of Judge Galton's reputation before advising him to waive his right to a jury trial in favor of a bench trial, thereby rendering that decision unknowing, unintelligent, and involuntary. Specifically, petitioner faults counsel for failing to advise him that Judge Galton was routinely recused by counsel litigating both civil and criminal matters in Multnomah County for lack of appropriate judicial temperament.

To prevail on a claim of ineffective assistance of counsel, petitioner must first show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense.  The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial.  *Id* at 696.  When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. at 122.

Petitioner testified during his PCR deposition that counsel never disclosed any previous problems he may have had with Judge Galton, and never discussed the possibility of removing Judge Galton from the case.   Respondent's Exhibit 135, pp. 19-20. Counsel submitted an affidavit wherein he did not deny that he had never discussed this issue with petitioner, but instead offered the following:

> 3.    I did not have negative experiences with
>       Judge Galton.  It may be that some, or
>       many, lawyers would affidavit him.  Such
>       was not indicated in my experiences with
>       him before Mr. Simington's trial.
>
>                 * * * * *
>
> 8.    As noted above, I did not have negative
>       experiences with Judge Galton.  In light
>       of my previous experiences with Judge
>       Galton and being aware of his mannerisms

14 - OPINION AND ORDER

> and preferences, I saw no evidence that
> Judge Galton lacked judicial fitness
> during Mr. Simington's case.

Respondent's Exhibit 139, p. 2.

The PCR trial court resolved this claim in a letter decision:

> While raised only by petitioner's pro se
> amended petition, the issue of whether counsel
> should have objected to the assignment of
> Judge Galton, is adequately addressed by
> counsel's affidavit that he did not have any
> problem with Judge Galton as a trial judge,
> and petitioner's failure to point to any
> evidence that he would have achieved a better
> outcome had any other judge heard the trial.

Respondent's Exhibit 144, p. 8.

Petitioner claims that the PCR trial court's decision does not address the central issue of whether a criminal defendant would want to know if his trial judge has a reputation for having mental health issues and being vindictive before consenting to a bench trial. Where trial counsel never had a bad experience with Judge Galton, and where he was aware of the Judge's mannerisms and preferences, his conduct did not fall below an objective standard of reasonableness when he failed to advise petitioner that other attorneys preferred to seek Judge Galton's recusal.

Even assuming counsel should have so informed petitioner, petitioner fails to establish that the outcome of the proceeding would have been different had he proceeded to a bench trial with another judge or to a jury trial. *See Osborn v. Belleque,* 385 Fed. Appx. 701, 703 (9th Cir. 2010) (where a jury was not more likely to

15 - OPINION AND ORDER

acquit than the trial judge, petitioner cannot succeed on ineffective assistance of counsel claim for failure to adequately advise as to the waiver). For these reasons, the PCR trial court's factual findings are not unreasonable, and its conclusion does not involve an unreasonable application of clearly established federal law.

## V.    **Ground Four(D): Failure to Object to Inadmissible Evidence**

Bruce Knight was a Plaid Pantry clerk working on June 25, 2003 when petitioner committed one of his robberies. When a detective visited Knight at his home in the aftermath of the robbery to present him with a photo montage for purposes of identifying the perpetrator, "one of them looked rather like the fellow who robbed [him], but [he] wasn't positive that that was -- it's hard to tell from a picture." Respondent's Exhibit 104, p. 98. Knight was nevertheless able to provide a fairly detailed description of petitioner during the trial: "[H]e was tall and thin. I would estimate at least six foot two, slightly receding hairline, narrow build, no -- no prominent scars or tattoos." *Id* at 95. However, when the prosecutor asked Knight whether he recognized the perpetrator in the courtroom, Knight replied "I'm not certain." *Id.* He explained, "If the gentleman in the blue shirt would stand up, I would get a better idea." *Id.*

Defense counsel objected, stating that such a procedure would be "terribly prejudicial" to his client. *Id* at 100. However, upon

further reflection he advised the court, "I want to have just a brief recess to consider some strategic matters involving this. I may be able to simplify this." *Id* at 103. Defense counsel and the prosecutor held an off-the-record discussion after which defense counsel withdrew his objection without explanation. *Id* at 104. The court had petitioner stand, and Knight was able to positively identify him as the perpetrator of the June 25 Plaid Pantry robbery.[2] *Id* at 104-105.

In counsel's Affidavit he prepared for petitioner's PCR trial, he stated that identification was not an issue in the case as "the videos of the robberies were quite good." Respondent's Exhibit 139, p. 2. "Regarding the identification of Mr. Simington by Bruce Knight in court, I initially objected to the identification procedure, but later withdrew my objection but cannot recall why." *Id*. Petitioner claims there was no strategic reason for counsel to drop his objection, and that identification was an issue insofar as: (1) Knight was unable to identify him from the photo montage; (2) Knight was initially unable to identify him in court; and (3) contrary to counsel's recollection, Knight was of the opinion that the video from the Plaid Pantry was "very grainy." Respondent's Exhibit 104, p. 107.

---

[2] Defense counsel would later put petitioner on the stand, where petitioner admitted being present at the Plaid Pantry at the time of the robbery. Respondent's Exhibit 104, p. 148.

Petitioner assumes that requiring him to stand up for identification purposes during his trial was unlawful, but he fails to provide any support for such a proposition. To the contrary, the case law supports the proposition that a court may require a defendant to stand for the purpose of identification. *U.S. v. Zammiello*, 432 F.2d 72 (9th Cir. 1970); *State v. Cram*, 176 Or. 577, 582-583, 160 P.2d 283 (1945). Because counsel did not withdraw a meritorious objection, upon an independent review of the record, the PCR trial court's decision denying this claim did not involve an unreasonable application of clearly established federal law.

## VI.    Grounds Four(F), Five & Six: Sufficiency of the Evidence

Petitioner argues Grounds Four(F), Five, and Six together as these claims are all based upon the alleged sufficiency of the evidence against him. Specifically, he alleges:

1. Counsel failed to challenge the applicability of the Robbery III charge involving Whole Foods (Count One) where he only aided and abetted Souders during the aftermath of a theft, not a robbery;

2. Trial counsel erred when he did not seek a motion for a judgment of acquittal on the basis that there was insufficient evidence showing petitioner used or threatened the use of force as to the June 20 (Count Two) and June 25 (Count Three) Plaid Pantry robberies;

3. While trial counsel moved for a judgment of acquittal as to Counts Two and Three as to whether petitioner was knowingly aided by another person who was actually present, appellate counsel was

18 - OPINION AND ORDER

ineffective for failing to pursue this
claim on appeal; and

4.    Trial counsel's argument that Count Three
      was improperly pled as plaintiff used
      physical force on Knight, as opposed to
      *threatened* the use of force, should have
      prevailed.    Instead, petitioner was
      convicted based upon insufficient
      evidence.

When reviewing a claim based on insufficient evidence, "[t]he
relevant question is whether, after viewing the evidence in the
light most favorable to the prosecution, *any* rational trier of fact
could have found the essential elements of the crime beyond a
reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)
(emphasis in original).    When the record supports conflicting
inferences, courts must presume the factfinder resolved the
conflicts in favor of the prosecution.    *Id* at 326.

1.    **Ground Four(F): Failure to Move for Acquittal as to
      Robbery III (Count One)**

According to petitioner, the incident at Whole Foods was a
theft, not a robbery, because Souders did not use or threaten the
use of force, thus petitioner was guilty only of aiding Souders
after she committed a theft.    He therefore believes counsel should
have moved for a judgment of acquittal as to the Robbery III
charge. The PCR trial court rejected this claim noting that such a
motion "would not have fallen on receptive ears, had it been made"
because Judge Galton believed the Robbery III charge was "the
easiest here, for what it's worth."    Respondent's Exhibit 144, p.

19 - OPINION AND ORDER

9. It also determined that "the fact finder would have determined that petitioner was aware that Souders was committing a theft, intended to aid and abet that theft and personally used or threatened the use of physical force to prevent the apprehension of Ms. Souders, or to overcome resistance to her making away with the goods." Respondent's Exhibit 145, pp. 14-15.

A person is guilty of Robbery III in Oregon if he uses or threatens the use of force in order to prevent or overcome resistance to the taking of property or to retain the property immediately after its taking, or if he aids and abets the perpetrator in the commission of the same. ORS 164.195; ORS 161.155. In this case, the evidence showed: (1) Souders took food items from Whole Foods while petitioner waited outside; (2) when two store employees pursued her, Souders pushed one of them away; (3) Souders then called for petitioner to intervene, and he punched one of the employees in the jaw, and physically threatened the other; and (4) after petitioner stopped the employees' pursuit of Souders, she picked up one of the stolen items and left with him. Respondent's Exhibit 103, pp. 68-76. Taking the evidence in the light most favorable to the prosecution, petitioner and Souders acted together, and Souders used physical force when she pushed one of the Whole Foods employees, and enlisted petitioner to assault her pursuers so as to overcome resistance to her taking the goods.

Accordingly, a motion for judgment of acquittal as to Robbery III would not have been successful.

### 2.   Ground Four(F): Force Requirement in 06/20 and 06/25 Plaid Pantry Incidents (Counts Two and Three)

Petitioner next asserts that while counsel moved for a judgment of acquittal as to the Plaid Pantry incidents from June 20 (Count Two) and June 25 (Count Three), he failed to do so on the meritorious basis that petitioner neither used force, nor threatened the use of force. The PCR trial court determined that counsel would have filed such a motion if a legitimate likelihood of success existed. Respondent's Exhibit 144, p. 10.

A review of the record reveals that during the June 20 incident, he pushed the store clerk aside to grab four cartons of cigarettes while Souders yelled to the clerk that petitioner was crazy and would hurt him. *Id* at 40-42. This was sufficient to both threaten and use force to take the items from the Plaid Pantry, and thus counsel was under no obligation to make such an objection.

Similarly, when petitioner robbed the Plaid Pantry on June 25, he walked around the counter to the clerk's area where Knight was standing. When Knight informed petitioner that he could not be back there, petitioner kept coming at him. When Knight put up his hands in a defensive gesture, petitioner walked right into them, forcing Knight to back up at which time petitioner informed him that it was a robbery. *Id* at 92. Viewed in the light most

21 - OPINION AND ORDER

favorable to the State, this was sufficient to amount to the use of physical force.  Accordingly, counsel was under no duty to seek a judgment of acquittal on these grounds.

### 3.    Ground Five: Ineffective Assistance of Appellate Counsel

Petitioner next asserts that trial counsel raised a meritorious issue during his motion for judgment of acquittal as to Counts Two and Three when he claimed that the State had failed to prove that petitioner was knowingly aided by another who was actually present.  He faults appellate counsel for not pursuing the claim during direct appeal.

In proving prejudice with respect to the performance of appellate counsel, a petitioner must demonstrate a reasonable probability that but for appellate counsel's failure, "he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285-286 (2000). He must also demonstrate that the omitted claim was "clearly stronger than issues that counsel did present." *Id* 288.

The PCR trial court resolved this issue in its letter opinion:

> The case against petitioner was replete with evidence of the criminal activity that supported his criminal convictions.   In addition to eye witness testimony, video camera surveill[a]nce and the petitioner's own testimony, the court made credibility determinations that weighed against petitioner's view of events.   It is eminently clear why appellate counsel would decide not to raise on appeal every colorable or nonfrivolous issue in order to discharge the obligation to provide the effective assistance of counsel. *Jones v. Barnes*, 463 U.S. 745, 754 (1983) holds that nothing in the

22 - OPINION AND ORDER

> Constitution requires "judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client." The "process of 'winnowing out weaker claims on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 539 (1986).
>
> An appellate attorney exercising reasonable professional skill and judgment would not have appealed the denial of petitioner's motions for judgment of acquittal. Appellate counsel's failure to raise this claim of error constitutes no violation of petitioner's rights. . . . Furthermore, petitioner had an opportunity through his Pro Se Brief to the Appellate Court to raise any additional claims he thought were appropriate. Petitioner's failure to raise these claims on appeal reflects their lack of merit and an implicit waiver of post-conviction claims against appellate counsel on these issues.

Respondent's Exhibit 144, pp. 10-11.

The evidence in this case, including the video evidence in Appendix A, established that petitioner and Souders worked in concert in these robberies. As a result, counsel's performance did not fall below an objective standard of reasonableness when he did not pursue this argument. Moreover, based upon the record, it is unlikely petitioner would have prevailed on appeal had counsel pursued the claims, thus he is unable to demonstrate prejudice from any failure on counsel's part.

**4. <u>Ground Six: Physical Force Element of Count Three as Due Process Violation</u>**

23 - OPINION AND ORDER

As his final claim, petitioner argues that counsel correctly argued that Count Three was improperly pled where it alleged that plaintiff used physical force on Knight. He believes the record shows only that he *threatened* the use of physical force during the confrontation. He therefore concludes the trial court should have granted the motion for judgment of acquittal.

In the absence of a reasoned state-court decision on this issue, the court has conducted an independent review of the record. As discussed above as to Ground Four(F), Knight told petitioner he could not come behind the counter where the register was located, and Knight put his hands up in a defensive gesture. Petitioner continued walking toward Knight, walking into his hands and forcing Knight to back up. Taken in the light most favorable to the prosecution, these facts were sufficient to constitute physical force, thus there was no due process violation. For all of these reasons, the state court decisions denying relief on these claims were neither contrary to, nor unreasonable applications of, clearly established federal law.

///

///

///

///

///

///

24 - OPINION AND ORDER

## CONCLUSION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#16) should be denied.  The court does, however, issue a Certificate of Appealability in this case as to petitioner's due process and ineffective assistance of counsel claims.

IT IS SO ORDERED.

DATED this ___5___ day of November, 2015.

_____
Michael H. Simon
United States District Judge